IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

BILLY J. TIDWELL,                                                                Plaintiff

v.                                             No. 2:05CV27-WAP-EMB

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                         Defendant

## REPORT AND RECOMMENDATION

Plaintiff Billy J. Tidwell, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of Social Security Administration (the "Commissioner"), which denied his claim for a Period of Disability and for Disability Income Benefits under Title II of the Act. The matter has been assigned to the undersigned United States Magistrate Judge for review and issuance of a report and recommendation. Having fully considered the record of this case, the submissions of the parties and the applicable law, I find and recommend as follows.

**Procedural History**

Plaintiff filed an application for disability benefits under Title II on September 10, 2002, alleging a disability onset date on December 15, 1999. (Tr. 50-52). The applications was denied initially and on reconsideration. (Tr. 26-42). In a hearing decision dated October 27, 2004, an administrative law judge ("ALJ") found plaintiff was not disabled as defined in the Social Security Act at any time when he met the earnings requirements of the law.[1] (Tr. 10-20). The

---

[1]Plaintiff's insured status for Title II ended on June 30, 2001. (Tr. 55). For insured status under the Act, an individual is required to have 20 quarters of coverage in the 40-quarter period ending with the first quarter of disability. This is the so-called "earnings requirement." *See* 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). Plaintiff must prove that he was disabled prior to his last date of Title II insurance coverage to obtain such benefits. *See* 20 C.F.R. §§ 404.130 and 404.131.

ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on November 26, 2004. (Tr. 5-7). The ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

**Statement of Facts**

Plaintiff was 47 years of age at the time of the hearing decision on October 27, 2004. (Tr. 14, 20). He completed high school. (Tr. 64). Plaintiff previously worked as a truck driver and a heavy equipment operator. (Tr. 59). He was six-feet and one inch tall and weighed 324 pounds. (Tr. 57). Plaintiff alleged that he could no longer work due to high blood pressure and diabetes, among other things. (Tr. 58). However, after a review and evaluation of the medical evidence of record, the subjective testimony at the hearing, (Tr. 145-73), and the testimony of a vocational expert, (Tr. 173-78), the ALJ found plaintiff not disabled. (Tr. 13-20). Contrary to Plaintiff's allegation of disability, the ALJ found that he had the residual functional capacity ("RFC") to perform the full range of light work activity. (Tr. 20, Finding No. 11).

**Standard of Review**

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*,

2

citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

**Law**

To be considered disabled and eligible for benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[2] *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[2]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

3

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

Because Tidwell's Title II insured status expired on June 30, 2001, he must establish that he became disabled on or before that date to be eligible for benefits. *See Barraza v. Barnhart*, 61

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

Fed.Appx. 917, 2003 WL 1098841, at *1 (5th Cir. 2003) (*citing Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990) ). "Evidence showing a degeneration of a claimant's condition after the expiration of his Title II insured status is not relevant to the Commissioner's Title II disability analysis." *See id.* (*citing Torres v. Halala*, 48 F.3d 887, 894 n. 12 (5th Cir. 1995) ).

**Analysis**

Plaintiff contends the Commissioner's decision is not supported by substantial evidence. Specifically, plaintiff makes the following arguments: 1) The ALJ's determination that plaintiff's diabetes mellitus, heart disease, cellulitis, depression, and peripheral vascular disease were not severe is not supported by substantial evidence; 2) The ALJ failed to consider the combined affect of plaintiff's severe impairments in making an RFC determination; and 3) The ALJ's dependence upon the opinion of the vocational expert was erroneous, and said opinion did not constitute substantial evidence because it was based upon a flawed hypothetical.

    *i. Severity Finding*

At step two of the sequential evaluation process, the ALJ found only plaintiff's hypertension to be a severe impairment. Plaintiff argues the medical evidence in this case supports a finding that his diabetes mellitus, heart disease, cellulitis, depression and peripheral vascular disease were also severe. In response, defendant argues the ALJ correctly found these impairments not be to be severe during the relevant time period. I agree with defendant.

In the Fifth Circuit, the standard for non-severity is as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir.1984).

The medical evidence indicates that prior to June 30, 2001, plaintiff's diabetes mellitus,

heart disease, cellulitis and peripheral vascular disease were only slight abnormalities "which had such minimal effect" on him "that it would not be expected to interfere with his ability to work. For example, with respect to plaintiff's diabetes, the medical evidence indicates that from November 1999 through May 2000, this condition was under good control with plaintiff's use of medication. (Tr.110, 111). Indeed, plaintiff even refused medication to deal with symptoms consistent with peripheral neuropathy.[3] *Id*. at 110.

As far as plaintiff's heart disease is concerned, an EKG done in October 1999 upon plaintiff's admission to the hospital for cellulitis showed a "questionable septal infarct, abnormal." (Tr. 102). Nonetheless, the EKG showed a normal sinus rhythm, *id.*; and plaintiff's heart had a regular rate and rhythm, and there was no murmur, gallop, rub or click. (Tr. 101-102). Moreover, there is no objective medical evidence in the record after October 1999 indicating plaintiff had a heart condition or that he received treatment for a heart condition.

Next, as noted above, plaintiff was hospitalized on October 22, 1999 for cellulitis of the right lower extremity. Plaintiff was treated with antibiotics and given diabetic education and released on October 26, 1999. (Tr. 102). And, though plaintiff was diagnosed with chronic cellulitis on November 9, 1999, (Tr. 111), it had resolved as early as November 23, 1999. There is no objective medical evidence regarding plaintiff's cellulitis between his alleged disability onset date and the date he was last insured.

With regard to plaintiff's peripheral vascular disease, plaintiff was seen by his doctor on May 1, 2000 for, among other things, complaints of cramping in his legs when he walked long distances and occasional swelling in his right lower leg. (Tr. 110). The doctor's assessment was

---

[3]As defendant points out in her brief, there is no indication on this record that plaintiff was ever actually diagnosed with peripheral neuropathy. Defendant's Brief at p. 11.

possible vascular disease, and he referred plaintiff to a vascular surgeon. *Id.* However, there is no further evidence in the record for the relevant time period regarding this condition .

And, with regard to plaintiff's argument that the ALJ erroneously failed to find his depression was severe, the record indicates there is no evidence of depression prior to June 2004, some three years after the date plaintiff was last insured. (Tr.132-138). At this time, Paul S. Leonard, Ph.D., found plaintiff's depression was secondary to his physical complaints and that plaintiff would "likely have substantial impairment in performing cooperative work relationships with coworkers, supervisors and the public." (Tr. 135). This evidence is, of course, irrelevant to any determination of disability for the relevant time period, and the ALJ rightfully rejected it. (Tr. 16). Moreover, plaintiff's contention that the ALJ wrongfully overlooked his own finding that plaintiff took Zoloft in 2001 is of little consequence because the medical evidence indicates plaintiff neither had symptoms of depression, nor was there any diagnosis of such prior to June 2004.

Ultimately, contrary to plaintiff's arguments, the foregoing medical evidence supports the ALJ's determination, that none of plaintiff's other conditions were severe during the relevant time period. As such, I find that the ALJ's determination that only plaintiff's hypertension was severe is supported by substantial evidence.

 *ii*. <u>RCF Finding</u>

Because plaintiff had a severe impairment, the ALJ was required to assess plaintiff's current RFC at step four of the sequential evaluation process and determine whether he could do his past relevant work or other work. Plaintiff takes issue with the ALJ's RFC determination, apparently suggesting the ALJ failed to consider the combined effect of all of plaintiff's severe impairments on his RFC. However, plaintiff's argument fails.

In this case, plaintiff's only severe impairment was his hypertension. As noted above, none of plaintiff's other alleged impairments were severe during the relevant time period. And, because there was no medical evidence in the record of any functional restrictions, the ALJ found plaintiff retained the ability to perform light work. (Tr. 18). The ALJ considered plaintiff's testimony regarding his pain and other limitations and found that most of it was based on his condition at the time of the hearing in 2004. As such, most of plaintiff's complaints of disabling pain and other limitations were not relevant to the time period under consideration. *Id.* Based on this, I find the ALJ's RFC determination was supported by substantial evidence.

### iii. *Finding That Plaintiff Could Perform Other Work*

Plaintiff argues the ALJ's decision is not supported by substantial evidence because the hypothetical question posed to the Vocational Expert ("VE") did not include all of plaintiff's impairments. Plaintiff's Brief at p. 12. Specifically, plaintiff suggests the VE's opinion could not amount to substantial evidence in support of the ALJ's conclusion that plaintiff could perform other work because the hypothetical posed by the ALJ included an RFC for light work and failed to mention plaintiff's depression. *Id.* at 12-14. As stated above, the ALJ's finding that plaintiff could perform light work during the relevant time period is supported by substantial evidence in the record. Further, it has already been established that there is no evidence of plaintiff's depression in the record prior to June 2004. Accordingly, because plaintiff failed to rebut the ALJ's finding that he could perform other work that existed in significant numbers in the national economy, the Commissioner's finding of not disabled should be upheld.

### **Recommendation**

For the aforementioned reasons, it is recommended that the decision of the Commissioner be affirmed.

The parties are referred to Local Rule 72.2(D) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned that any such objections are required to be in writing and must be filed within ten days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**RESPECTFULLY SUBMITTED** this, the 8th day of March, 2006.

> **/s/ Eugene M. Bogen**
> **UNITED STATES MAGISTRATE JUDGE**